1

2

3

4

5

6              IN THE UNITED STATES DISTRICT COURT

7            FOR THE NORTHERN DISTRICT OF CALIFORNIA

8

9

10   ITALIAN COLORS RESTAURANT, on behalf of          No. C 03-3719 SI
     itself and all similarly situated persons,

11                                                     **ORDER GRANTING DEFENDANTS'**
                         Plaintiffs,                   **MOTION TO TRANSFER VENUE TO THE**
12     v.                                              **SOUTHERN DISTRICT OF NEW YORK**
                                                       **AND DENYING PLAINTIFFS' MOTION**
13   AMERICAN EXPRESS COMPANY and                      **TO CONSOLIDATE AND APPOINT LEAD**
     AMERICAN EXPRESS TRAVEL RELATED                   **COUNSEL**
14   SERVICES COMPANY, INC.,

15                       Defendants.

16   _____/

17

18          On November 7, 2003, this Court heard oral argument on defendants' motion to transfer venue  and

19   plaintiffs' motion to consolidate and appoint lead counsel.  Having considered the arguments of counsel and

20   the papers submitted, the Court hereby TRANSFERS venue to the Southern District of New York, and

21   DENIES plaintiffs' motion as premature.

22

23                                  **BACKGROUND**

24          This action was filed in this Court on August 8, 2003.  Months earlier, however, in June, 2003, a

25   virtually identical action, based on a nearly verbatim complaint, was filed in the Eastern District of New York,

26   on behalf of New York-based merchants and small business owners representing a proposed nationwide class

27   ("Phuong Complaint"). Mot. to Transfer, Ex. A.  The Phuong complaint was voluntarily dismissed at plaintiffs'

28   behest on July 16, 2003, after defendants filed notice of their intent to file a motion to dismiss. Decl. of

United States District Court

For the Northern District of California

United States District Court

For the Northern District of California

Schneider at 2. One day before the dismissal notice in the <u>Phuong</u> action, plaintiffs' counsel filed the same complaint in the Central District of California using a different local business as the named plaintiff ("<u>Il Forno</u> Complaint"). <u>Id.</u> The <u>Il Forno</u> complaint was filed but never served on defendants. <u>Id.</u> Roughly three weeks later, the instant complaint was filed in the Northern District of California. All three actions, including the complaint currently before this Court, allege violations by defendants American Express Co. and American Express Travel Related Services (hereinafter collectively referred to as "American Express," unless required by context) of Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15, 26, and Section 1 of the Sherman Act, 15 U.S.C. § 1. Compl. ¶ 4.

Plaintiffs allege that certain provisions of the standard contract executed by all merchants who agree to accept American Express cards constitute anticompetitive tying arrangements. <u>Id.</u> at ¶ 45. The standard contract requires merchants who accept the American Express charge card to accept the American Express credit card. <u>Id.</u> Unlike a credit card, a charge card is not a means of financing, but a "method of payment." <u>Id.</u> at ¶ 18. Charge card users must pay their balance in full each month, as opposed to credit card users, who use their cards to access revolving credit based on a predetermined interest rate. <u>Id.</u> at ¶¶ 18, 28. Merchants are willing to pay higher fees to access the American Express charge card member base, based on perceptions that charge card users are more affluent. <u>Id.</u> at ¶ 23. These perceptions are supported by data indicating that the average purchase on an American Express charge card is 17% higher than the average credit card purchase. <u>Id.</u> at ¶ 24.

For every purchase made on a credit or charge card, merchants pay a "discount rate" to the credit or charge card company. The discount rate for competitor credit cards such as Visa and MasterCard is usually between 0.85 and 1.8%. <u>Id.</u> at ¶¶ 22, 43. According to plaintiffs, American Express unlawfully leverages its charge card member base to force merchants to accept its credit card at a "grossly supracompetitive" discount rate of 3.0%. <u>Id.</u> at ¶¶ 2, 21. Similar tying arrangements formerly employed by Visa and MasterCard were discontinued as part of a settlement agreement in a similar antitrust action. <u>Id.</u> at ¶ 43, <u>citing</u> <u>In re Visa Check/Mastermoney Antitrust Litigation</u>, 2003 WL 1712568 (E.D.N.Y. Apr. 1, 2003). Plaintiffs allege that the American Express tying arrangement is an unlawful restraint of trade under federal antitrust laws. Compl.

¶ 3.  Now before the Court are defendants' motion to transfer venue to the Southern District of New York, and plaintiffs' motion to consolidate cases and appoint lead counsel.

**LEGAL STANDARD**

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil matter to any other district or division where it might have been brought."  28 U.S.C. § 1404(a).  The purpose of § 1404(a) is to "'prevent the waste of time, energy, and money' and 'to protect litigants, witnesses and the public against unnecessary inconvenience and expense.'"  Van Dusen v. Barrack, 376 U.S. 612, 616, 84 S. Ct. 805, 809 (1964), citing Continental Grain Co. v. The FBL-585, 364 U.S. 19, 26-27, 80 S. Ct. 1470, 1474-75 (1960).  A motion for transfer lies within the broad discretion of the district court, and must be determined on an individualized basis.  See Jones v. GNC Franchising, Inc., 211 F.3d 495, 498 (9th Cir. 2000), citing Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29, 108 S.Ct. 2239, 2244 (1988).

To support a motion for transfer, the moving party must establish: (1) that venue is proper in the transferor district; (2) that the transferee district is one where the action might have been brought; and (3) that the transfer will serve the convenience of the parties and witnesses and will promote the interests of justice.  See Goodyear Tire & Rubber Co. v. McDonnell Douglas Corp., 820 F. Supp. 503, 506 (C.D. Cal. 1992).  In determining the convenience of the parties and witnesses and the interests of justice, the Ninth Circuit considers "multiple factors" including:

> (1) location where the relevant agreements were negotiated and executed; (2) the state that is most familiar with the governing law; (3) the plaintiff's choice of forum; (4) the respective parties' contacts with the forum; (5) the contacts relating to the plaintiff's cause of action in the chosen forum; (6) the differences in the costs of litigation in the two forums; (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses; and (8) the ease of access to sources of proof.

Jones, 211 F.3d at 498-99.  The existence of a forum selection clause, along with the forum state's relevant public policy, may also comprise "significant factor[s] in the court's § 1404(a) analysis."  Id.

3

United States District Court

For the Northern District of California

**DISCUSSION**

I.    **Defendants' motion to transfer venue**

On a motion to transfer, the moving party must first demonstrate that venue is proper in both the transferor and transferee courts, as required by the first two components of the Goodyear test. Thereafter, the Court uses the multi-factor determination set forth in Jones to establish the third element of Goodyear: convenience to the parties and witnesses, and the interests of justice. In this case, venue is proper in both the transferor and transferee courts under 15 U.S.C. § 22, which provides for the filing of an antitrust suit against a corporation in any district where it conducts business. Accordingly, the dispute centers on which party is favored by application of the ten Jones factors. As explained infra, this balance weighs heavily in favor of transferring the action to the Southern District of New York.

A.    **Location where the relevant agreements were negotiated and executed**

The parties do not dispute that the individual named plaintiff in this action executed the agreement from its place of business in California. Plaintiffs argue that more of the relevant tying agreements were executed by merchants in California than in any other state. Opp'n. at 5. Plaintiffs support this statement with state-by-state analyses of credit card receivables and overall retail sales. Decl. of Zusman, Ex. A, B. Neither of these statistics, however, is broken down by creditor, making it impossible to tell how much of the share belongs to American Express. Moreover, as the most populous state in the country, California has a disproportionate share of many economic activities. By this logic, as defendants illustrate, "virtually every significant class action case would need to be litigated in California," a logic that has been repeatedly rejected. See, e.g., Ho v. Ikon Office Solutions, Inc., 143 F. Supp. 2d 1163, 1167-68 (N.D.Cal. 2001).

Many merchants throughout every state in the nation negotiated and executed identical agreements. If the named plaintiff purports to act on behalf of a nationwide class of merchants, there is nothing unique or probative about the location of its place of business. Furthermore, while the agreements with respect to defendant TRS may have been mailed from its offices in Phoenix, Arizona, the New York office, as the principal place of business, is likely to have drafted the original agreement and developed the business policy

behind it.  Neither party alleges that every agreement was negotiated in person.  The very nature of this type of agreement, which is transmitted through the mail and executed by merchants at thousands of individual businesses throughout the country, deprives this factor of any weight in the analysis of proper venue.

### B.   Forum state most familiar with the governing law

Plaintiffs correctly state that where federal law governs all claims raised, "either forum is equally capable of hearing and deciding those questions."  DealTime.com Ltd. v. McNulty, 123 F. Supp. 2d. 750, 757 (S.D.N.Y. 2000).  Although the merchant agreements at issue contain a New York choice of law clause, such a provision alone does not demonstrate that federal courts sitting in New York have a more well-developed body of antitrust law than those in California.  Accordingly, this factor, like the last, weighs in favor of neither party.

### C.   Plaintiffs' choice of forum

Generally, courts afford considerable weight to a plaintiff's choice of forum in determining a motion to transfer, subject to various conditions.  See Piper Aircraft Co. v. Reyno, 454 U.S. 235, 257, 102 S.Ct. 252, 266 (1981).  The plaintiff's choice is given less deference where, as here, the action is brought on behalf of a nationwide class.  See Lou v. Belzberg, 834 F.2d 730, 739 (9th Cir. 1987); Koster v. (American) Lumbermens Mut. Cas. Co., 330 U.S. 518, 524, 67 S.Ct. 828, 832 (1947) ("where there are hundreds of potential plaintiffs . . . the claim of any one plaintiff that a forum is appropriate merely because it is his home is considerably weakened.").

The complaint admits that all potential class members "have been damaged in precisely the same fashion, by precisely the same conduct." Compl. ¶ 16.  Interchangeable plaintiffs could be and have been found in several districts, including the Eastern District of New York, where the first cause of action was filed. Decl. of Schneider, Ex. A.  Notably, in that case, the same counsel representing plaintiffs in the present action asserted that venue was proper in the Eastern District of New York because the defendants "may be found or transac[t] business" there, and "have marketed their charge card services . . . to thousands of merchants

United States District Court

For the Northern District of California

within [the Eastern District]." Mot. to Transfer, Ex. A, Phuong Compl. ¶ 5.  Here, the only contact between the proposed plaintiff class and this district is the individual named plaintiff's place of business.  This contact is no more forceful than the link between the thousands of potential class members and their respective districts, a roster which surely includes every district court in the nation.

Furthermore, the Ninth Circuit has established that courts should disregard a plaintiff's forum choice where the suit is a result of forum-shopping.  See Alltrade, Inc., v. Uniweld Products, Inc., 946 F.2d 622, 628 (9th Cir. 1991).  One could rationally infer forum shopping here, based on plaintiffs' repeat filing and plaintiffs' admitted perceptions that California provides a more favorable rule of decision, as discussed below.  Plaintiffs voluntarily dismissed the Phuong action one day before filing the first California case. Decl. of Schneider at 2.  The first California case, in the Central District, was filed but never served on defendants. Id.  Throughout this "odyssey," as defendants put it, the roster of plaintiffs' counsel has remained substantially the same.[1]

At oral argument, plaintiffs stated that they brought suit in California so as to avail themselves of the Ninth Circuit's disfavor of arbitration clauses within adhesion contracts.  According to plaintiffs, the relocation became necessary after it came to their attention during the Phuong action that not all potential class members had signed identical merchant agreements.  Merchants who signed on after a certain year were bound by a compulsory arbitration clause, while others were not bound.  Plaintiffs stated that in order to serve their entire proposed class equitably, they sought a venue where the two groups of merchants would be treated identically as a matter of law, assuming a negation of the arbitration clause.

Pursuit of a venue where a class can be maintained without bifurcation is not a disfavored strategy per se, but this does not explain plaintiffs' forum shopping within California.  Plaintiffs secured the perceived tactical gain they purportedly seek when they first filed suit in the Central District.  If plaintiffs' sole objective in repeat filing was to accrue perceived benefits for their class as a whole, this does not explain why they filed complaints in both the Central and Northern Districts.  The Court's forum shopping concerns persist.  Accordingly, plaintiffs' choice of forum is disregarded.

---

[1] One member of plaintiffs' local counsel was employed at a different firm in New York when the New York case was filed. Id. at Ex. A.

6

**United States District Court**
For the Northern District of California

**D.     Respective parties' contacts with the forum**

Plaintiffs' contacts with the forum, as previously discussed, are of minimal value in a class action, especially in view of plaintiffs' forum shopping.  In addition to their demographic analyses of credit card receivables as described in subsection (A) <u>supra</u>, which this Court rejects, plaintiffs also urge the Court to consider other lawsuits as contacts between the defendants and this forum. Opp'n. to Mot. to Transfer at 7.  According to plaintiffs, one or more of the defendants is a party in 225 civil cases and more than 25,000 bankruptcy proceedings currently pending in California courts. Decl. of Zusman at 2.  However, plaintiffs offer no source of law which instructs the Court to count unrelated lawsuits as contacts for the purposes of determining venue.  Neither party has substantial contacts with the present forum.

**E.     Contacts relating to the plaintiff's cause of action in the chosen forum**

Here, again, plaintiffs argue that this district is the most appropriate forum because Californians have more small businesses and hence have executed more American Express merchant contracts than any other state. Opp'n. to Mot. to Transfer at 7.  Plaintiffs offer no evidence to show that per capita, California is significantly more affected by the contracts than other states, including New York.  As in subsection (A), this argument finds no place here.

**F.     Difference in the cost of litigation**

Litigation costs weigh heavily in favor of transfer to the Southern District of New York, with regard to both documentary and testamentary evidence.  Documents pertaining to defendants' business practices are most likely to be found at their principal place of business.  Although developments in electronic conveyance have reduced the cost of document transfer somewhat, the cost of litigation will be substantially lessened if the action is venued in the same district where most of the documentary evidence is found.  A reduction in document sharing and litigation costs serves both parties as well as the public interest.  Plaintiff Italian Colors, on the other hand, can be expected to contribute comparatively little documentary evidence to the action.  As explained above, its interests are entirely fungible with those of a potential class member in the Southern District

of New York.

Generally, litigation costs are reduced when venue is located near most of the witnesses expected to testify or give depositions.  Beyond merely having a principal place of business in New York, defendants specifically name at least two individual American Express officers based in New York whose expertise and expected testimony is directly relevant to the claims. Mot. to Transfer at 9, <u>citing</u> <u>Maxon v. Jefferson Pilot Securities Corp.</u>, 2002 WL 523575, *4 (N.D.Cal. Apr 2, 2002)  (relevant expertise of potential witnesses dispositive when transferring venue based on relative location of witnesses).  Since the claims arise solely out of defendants' business practices, the parties would expect that most of the witnesses will be the defendants' employees.  Accordingly, this factor weighs heavily in favor of transfer.

**G.    Availability of non-party witnesses**

Plaintiffs predict that the most "important" non-party witnesses are likely to be employees and officers of Visa U.S.A., which plaintiffs characterize as defendants' largest competitor. Opp'n to Mot. to Transfer at 1.  Visa maintains offices within this district in San Francisco and Foster City. <u>Id.</u>  As defendants point out, this approach comprises "an entirely different logic to [plaintiffs'] original choice of venue [New York]," which was premised on defendants' place of business. Reply in Supp. of Mot. to Transfer at 4.  Further, plaintiffs appear to understate the value of non-party witnesses from MasterCard, another credit card competitor with its principal place of business in the Southern District of New York. <u>Id.</u> at 4; Supp. Schneider Decl. at Ex. 1. Plaintiffs do not attempt to explain how non-party witnesses from Visa would provide more probative information about the relevant market share and competitive business practices than those from MasterCard or any other non-party.  This factor does not weigh in plaintiffs' favor.

**H.    Ease of access to sources of proof**

This factor derives from the same operative facts as subsection (F) <u>supra</u>, and weighs heavily in favor of venue transfer.

**United States District Court**
For the Northern District of California

1

### I.   Forum selection clause

2    As stated in <u>Jones</u>, the presence of a forum selection clause functions as a ninth factor weighing in favor

3   of venue transfer. <u>See</u> 211 F.3d at 499.  In the instant case, the individual plaintiff signed a merchant agreement

4   in 1993 that had a New York choice of law clause, but did not have a forum selection clause. Decl. of

5   Alterman at 1, Ex. E.  The most recent merchant agreement, dated May 2003, does contain a New York

6   forum selection clause. <u>Id.</u>, Ex. F.  It is unclear what year the forum selection clause first appeared on the

7   merchant agreement.  Plaintiffs argue that if the clause first appeared in 2003, the percentage of the potential

8   class bound to it is a relatively small fraction, as most potential class members will have signed an earlier

9   agreement.  Even in the light most favorable to the plaintiff, assuming that the clause made its debut in 2003,

10   and thereby applies to only a part of the proposed plaintiff class, this factor still leans in favor of venue transfer,

11   since the clause never mentioned California or any other state.

12

13

### J.   Public policy

14    Lastly, plaintiffs urge the Court to consider the forum state's public policy interest in declining to enforce

15   the merchant agreement's collective action waiver and compelled arbitration provisions. Opp'n. to Mot. to

16   Transfer at 2-3.  Plaintiffs rely on <u>Jones</u>, wherein the Ninth Circuit held that the forum selection clause of a

17   franchise agreement, which would otherwise be honored under federal law, was precluded by California's

18   strong public policy interest against such provisions. <u>See</u> 211 F.3d at 499.  <u>Jones</u>, however, is distinguishable

19   from the instant action because the public policy at issue there concerned venue itself, rather than the merits of

20   the claim. <u>Id.</u>

21    Plaintiffs cite <u>Ting v. AT&T</u>, 319 F.3d 1126 (9th Cir. 2003) and <u>Circuit City Stores, Inc. v. Mantor</u>,

22   335 F.3d 1101 (9th Cir. 2003) as a source of California's public policy against anti-class action and compelled

23   arbitration clauses.   However, this is but one possible interpretation of public policy.  As defendants point out,

24   an equally plausible interpretation is that arbitration clauses do not offend the public policy of either New York,

25   California, or federal common law – each of which has its own "well-developed bod[y] of law regarding

26   arbitration." <u>Id.</u>  More importantly, the question of arbitration is not presently before the court; its invocation

27

28                                                            9

as a source of public policy is premature on a motion to transfer.  In short, plaintiffs fail to illustrate how transfer will offend the public policy of this Court's forum state.

Plaintiffs' argument concerning California public policy is further weakened by the fact that plaintiffs filed, but did not serve and apparently did not intend to pursue, a claim in the Central District.  In sum, all factors not neutral in disposition weigh in favor of venue transfer.  Accordingly, defendants' motion to transfer venue is GRANTED and venue is hereby TRANSFERRED to the Southern District of New York .

## II.      Consolidation and appointment of lead counsel

Even in the absence of venue transfer, consolidation under Federal Rule of Civil Procedure 42(a) is a device constricted in scope to multiple cases pending in the same district.  Plaintiffs cite no authority by which this Court could divest other Article III courts of jurisdiction over matters pending before them.  Only the presiding court can order transfer of venue.  See 15 Fed. Prac. & Proc. Juris. 2d § 3844.   Moreover, appointment of lead counsel is premature before other counsel file cases on behalf of other clients.  No competition exists among counsel that requires refereeing by the Court, and no class has yet been certified, or even proposed.  If and when this becomes problematic, the Judicial Panel on Multi- District Litigation is the appropriate arbiter.

Having granted defendants' motion to transfer venue, however, plaintiffs' motion to consolidate and appoint lead counsel is DENIED as premature.  This motion is not proper before the transferor court, and should be reserved for the transferee court.

## CONCLUSION

For the foregoing reasons and for good cause shown:

(1) Defendants' motion to transfer venue is GRANTED and this action is TRANSFERRED to the Southern District of New York; and

(2) Plaintiffs' motion to consolidate and appoint lead counsel is denied.

United States District Court
For the Northern District of California

**IT IS SO ORDERED.**

Dated: November 7, 2003                           S/SUSAN ILLSTON
                                                  SUSAN ILLSTON
                                                  United States District Judge

United States District Court

For the Northern District of California

11